UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Carmen Walker Johnson,   Case No.: 13-54471-wsd
   Chapter 13
  Debtor   Hon. Walter Shapero
_____/

## OPINION INCIDENT TO PROOF OF CLAIM #5

The Court confirmed the Debtor's Chapter 13 plan on December 13, 2013. That plan contemplated continuing monthly payments via the Chapter 13 Trustee to Ocwen Loan Servicing, LLC, as servicer for HSBC Bank USA, N.A. ("Creditor") incident to a first mortgage on the Debtor's residence at 24671 Pembrooke Dr., Southfield, Michigan 48033, in the amount of $1,566, as well as additional monthly payments of $240 for 25 months to cure prepetition arrearages. The Debtor based this treatment on the understanding that on February 10, 2012 she had successfully entered into a proposed loan modification ("Loan Modification") offered to her by Creditor. Creditor did not object to the Chapter 13 plan prior to its confirmation. Following that loan modification process, the Debtor proceeded to remit some eleven or so of the payments called for in the Loan Modification, and, did so via MoneyGram. Unknown to the Debtor at the time, Creditor did not accept any of those payments and instead returned them to MoneyGram, not to the Debtor, and did not otherwise notify the Debtor of those returned payments at the time. The MoneyGram issuer apparently did not inform Debtor of those returned remittances, but at some point, the Debtor did discover that fact and it was apparently largely what precipitated her bankruptcy filing.

On February 4, 2014, Debtor filed a protective Proof of Claim #5 on Creditor's behalf asserting a claim for $224,415, with an arrearage of $6,000, and indicating payments consistent

with what the confirmed plan stated. Notice of that claim filing by the Debtor was contemporaneously given to Creditor. The evidence indicates that post-confirmation, the Chapter 13 Trustee began making the payments to Creditor in the amounts called for under the confirmed plan. On December 24, 2014, Creditor filed an Amended Proof of Claim #5 in the amount of $323,356.38, with an arrearage of $107,861.99. On February 16, 2015, and Creditor also filed an objection to the Debtor's protective Proof of Claim. The competing claims precipitated an evidentiary hearing.

The Court finds for the Debtor and sustains her objection to Creditor's claim for a number of reasons. The first relates to the effectiveness of the Loan Modification, which was a written document from Creditor addressed to the Debtor and stating first the Debtor's agreement that the then new principal balance under the modified note and mortgage will be $290,705.89 and further stating in relevant part:

> In order to accept this modification on your loan, you must complete ALL of the following steps **on or before** 2/10/12, ("Due Date"):
>
> 1. **SIGN** the bottom of the Agreement on the line(s) for the Borrower(s);
>
> 2. **FAX** the fully executed Agreement to:       Attention: Home Retention
>                                                   Department (407) 737-5693;
>
> 3. **PAY** the full down payment in the amount of: $2,102.64
>                                                   [*See Payment Instructions Attached*]
>
> 4. **NEW MONTHLY PAYMENT:**
> Principal and Interest Payment                    $1,534.45
> Total (**which may or may not include escrow**)   $2,102.64
>                                                   **starting on** 3/1/12
>
> 5. **SEND** proof of insurance coverage*   Attention: Escrow Department
>                                            Fax: (888) 882-1816
>                                            Email:updateinsuranceinfo@ocwen.com

Exh. 1 (all bold text in original). It was stipulated that the Debtor correctly and timely

accomplished the above paragraphs 1, 2, 3, and 5. The dispute is with regard to paragraph 4. Creditor's position is that (a) after the Debtor made the so-called "down payment" described in paragraph 3, the Debtor made her first monthly payment required by paragraph 4 on March 9, 2012, which was several days after the indicated start date of March 1, 2012; and (b) the Debtor made that March 9, 2012 payment in the incorrect amount, paying only $1,534.45 rather than the indicated $2,102.64. Creditor's position is that the Debtor's compliance with each of the five above paragraphs is a condition precedent to the Debtor's acceptance of the Loan Modification, and the Debtor's indicated tardy payment precluded the Loan Modification from ever becoming effective.

The Court finds that the Debtor accepted the Loan Modification and sufficiently complied with all the requirements contained in its plain terms to the point that it thus became a binding contract, enforceable in accordance with its terms. While the other paragraphs begin with a verb and require the Debtor to take a particular action, the contested paragraph 4 is informational and communicates to the Debtor what her continuing monthly payments will be. Also, the Loan Modification is internally contradictory. Paragraph 4 explicitly states in bolded text that such payments will be starting on March 1, 2012. However, the operative language preceding that paragraph states: "In order to accept this modification on your loan, *you must complete ALL of the following steps on or before 2/10/12*" (emphasis altered). If that initial monthly payment was to start March 1, 2012, it would be impossible for the Debtor to pay it on or before February 10, 2012. The Debtor's promise to make continuing monthly payments (subsequent to the so-called "down payment" described in paragraph 3) was *a continuing obligation* under the Loan Modification, not a condition precedent to its acceptance. "Courts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language in the

contract." *Able Demolition v. Pontiac*, 275 Mich. App. 577, 584 (2007) (quoting *Mikonczyk v. Detroit Newspapers, Inc.*, 238 Mich. App. 347, 350 (1999)). Here, the language of the Loan Modification does not explicitly provide that such was a condition precedent, but rather elsewhere explicitly provides that the continuing payments were continuing obligations of the Debtor after both parties had accepted the Loan Modification. The Loan Modification provides:

> Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:
> 
> ***
> 
> 2. You promise to make an initial payment in the amount of $2,102.64 on or before 2/10/12, *after which you will commence payments of principal and interest in the amount of $1,534.45 beginning on 3/1/12 and continuing on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full*.

Exh. 1 (emphasis added). Reinforcing the Court's conclusion is the principle that a contract should be construed against the drafter, which in this case was Creditor. *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 472 (2003) (quoting Restatement (Second) of Contracts § 206). The Court thus finds that the Loan Modification, on its face and by its plain terms, mandates the conclusion that the Debtor accepted it.

Second, there are a number of facts in this case that cumulatively considered equitably estop and should operate to preclude Creditor from pursuing or prevailing on its claim. Those facts are: (a) if it was Creditor's then position that the Loan Modification never became effective, it did not timely notify the Debtor of such, leading the Debtor on the belief it was to continue remitting payments; (b) Creditor's own employee witness indicated her awareness that MoneyGram (which was one of the permitted few options for remitting payments under the Loan Modification, at least for the initial down payment) often fails to notify payors of returned payments and, under the circumstances, Creditor should have at least notified the Debtor

directly; (c) Creditor did not object to the provisions of the plan, which were consistent with the payment terms of the Loan Modification; and (d) post-confirmation, Creditor received and accepted several monthly plan payments from the Chapter 13 Trustee before it filed its competing proof of claim, including for many months after Debtor had filed her proof of claim consistent with the Loan Modification and confirmed plan provisions.

Debtor also makes the argument that, as a matter of law, Creditor's failure to object to plan confirmation requires denial of Creditor's proof of claim, which is inconsistent with the terms of the confirmed plan. As to that argument, the Court notes that while it might have merit on its face, the Court need not decide that question in light of the other above stated conclusions.

The Debtor's objection(s) to Creditor's Amended Proof of Claim is therefore sustained. In light of the Court's conclusion, there may or may not be issues regarding how or if the Debtor's payments were properly applied to her account. The Court finds that any such issues should be raised by separate motions or proceedings. The Court is contemporaneously entering an appropriate order.

```
Signed on August 26, 2016
                                        /s/ Walter Shapero
                                    Walter Shapero
                                    United States Bankruptcy Judge
```